Walter RAGLIN, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 90–SC–783–MR.

Supreme Court of Kentucky.

May 9, 1991.

As Modified on Denial of Rehearing
Aug. 29, 1991.

Patricia H. Rabits, Lexington, for appellant.

Frederic J. Cowan, Atty. Gen., Mitchell L. Perry, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

## OPINION OF THE COURT

Appellant was indicted for trafficking in cocaine, subsequent offense, and moved the court to suppress evidence obtained as a result of a search of his automobile. After an evidentiary hearing, the court denied his motion to suppress. The jury convicted him as charged and appellant was sentenced to 20 years' imprisonment and fined $20,000. He appeals his conviction as a matter of right.

At approximately 2:30–3:00 p.m. on July 18, 1990, the police received a tip from an anonymous caller that, a short time before, a black male in a white Corvette had been observed snorting cocaine at a certain hotel parking lot. The caller also stated that the subject was observed in and around a brown Oldsmobile which was parked in the lot. The police detective checked the license numbers furnished by the caller and found that the Corvette was registered to appellant, who is black, and the Oldsmobile was registered to his brother.

The police took a dog that was trained to detect drugs and set up a surveillance in the parking lot. The Oldsmobile was parked in the lot, but the Corvette was not there. At approximately 5:30 p.m., the white Corvette pulled into the lot beside the Oldsmobile. Appellant, who was known to the police in the context of prior incidents involving cocaine, exited the Corvette, walked to the Oldsmobile and opened the door. It appeared that he was transferring something from the Corvette to the Oldsmobile. At that time the police approached appellant for the purpose of making an investigatory stop. He was not arrested. The dog was taken to the Corvette and signalled the presence of drugs. At that point the Corvette was searched and the cocaine was found. The police stated that they had not attempted to secure a search warrant before searching appellant's Corvette.

Appellant asserts that the trial court erred in denying his motion to suppress the evidence seized from this warrantless search. He argues that the police had 2½ to 3 hours to obtain a warrant and simply failed to do so. He also argues that there were no exigent circumstances and that no exception to the 4th Amendment warrant requirement applies. The search was, therefore, illegal, making the evidence obtained from the search inadmissible.

Contrary to appellant's argument, the anonymous informer's tip, in and of itself, did not provide probable cause upon which to justify issuing a search warrant, nor did it provide a reasonable suspicion to make an investigatory stop of appellant or of his vehicle. It was not until after much of the information in the tip was corroborated by the police investigation and surveillance and until appellant and his Corvette returned to the scene, where he proceeded to open the Oldsmobile and transfer property to it, that there was an adequate basis for an investigatory stop. *Alabama v. White*, 496 U.S. ——, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). With the combination of the foregoing events and the signal from the dog as to the presence of drugs, the probable cause requirement was met. As appellant was not under arrest prior to the search, and he had driven the white Corvette minutes before being stopped for investigation by the police, exigent circumstances were present. The existence of probable cause and exigent circumstances was sufficient to authorize the warrantless search. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

*Shanks v. Commonwealth*, Ky.App., 574 S.W.2d 688 (1978), cited by appellant is distinguishable. In addition, none of the cases cited by appellant indicates an intent by this Court to adopt a more stringent policy than that in *Chambers, supra*, regarding the search of an automobile on facts such as are present in this case. Where, as in this case, the police have a legitimate reason to stop an automobile and probable cause to search it, the warrantless search of the automobile is not improper. *Estep v. Commonwealth*, Ky., 663 S.W.2d 213, 215 (1983).

For the foregoing reasons, the judgment of conviction of the Fayette Circuit Court is hereby affirmed.

All concur, except COMBS, J., who dissents by separate opinion.

1. No evidence was introduced as to his/her reliability or lack thereof.

COMBS, Justice, dissenting.

I respectfully dissent and would suppress the evidence on which the conviction was based.

At the suppression hearing Detective Keith Howard admitted that he and four or five other officers were present when they received information about the anonymous tipster.[1] They received the information at approximately 3:00 p.m. and waited at the hotel parking lot until 5:30 when the white Corvette returned. Detective Howard admitted that he had on many occasions obtained search warrants from district judges and that he had never experienced any difficulties. He was asked:

Q So, in fact, in the two and a half hour time period that elapsed between the time Sergeant Jackson said he got this phone call and the time Mr. Raglin actually pulled into the lot, you had two and a half hours you could have gone and petitioned a district court judge for a search warrant for the automobile; could you not?

A No, ma'am.

Q You couldn't?

A No.

Q Why not?

A We didn't feel like we had enough probable cause at the time though we knew that the drug dog, if he alerted on the vehicle, would establish enough probable cause for us to obtain that search warrant. So really, you're only talking the dog alerted less than five minutes after Mr. Raglin pulled up, but as far as enough probable cause for an affidavit prior to that time, we did not feel we had enough probable cause for that affidavit, so we did not petition any judge.

If the officers admittedly lacked probable cause before the barking of the drug dog, I believe that their actions invaded the protections set forth in Section 10 of Kentucky's Constitution.[2]

2. "Section 10. Security from search and seizure; conditions of issuance of warrant. The people shall be secure in their persons, houses, papers and possessions, from unreasonable

**496**

The majority acknowledges that the telephone tip was not sufficient to create probable cause, or even reasonable suspicion justifying an investigatory stop. It goes on, however, to conclude that reasonable suspicion did arise when "much of the information in the tip was corroborated by the police investigation and surveillance," and when "appellant and his Corvette returned to the scene, where he proceeded to open the Oldsmobile and transfer property to it". What did the police establish? That the described Corvette was registered to the appellant and the Oldsmobile to his brother; and that the appellant drove to the parking lot and transferred "property" from his own car to his brother's. There is *absolutely nothing* in these facts to warrant a reasonable suspicion of criminal activity or to corroborate the anonymous, unsworn report that the appellant possessed cocaine.[3]

Just as the police did not have reasonable suspicion before the dog signaled, they did not have probable cause after the bark. There was no reasonable justification for accosting the appellant or for subjecting his auto to a sniff search.[4] To say that this search can provide probable cause for an incremental search begs the question, and renders meaningless the guarantees of Section 10. Under the majority rationale, had the police arrived to find the Corvette parked unoccupied, they might properly have taken the dog to the car and, upon a signal, searched the vehicle. Under the same rationale, any individual anonymously traduced may be stopped on the street and, if the dog reacts, searched.

Even assuming that the circumstances did establish probable cause, I cannot agree that the search was proper absent a warrant. There is a tremendous constitutional difference between a search with and a search without a valid warrant. Surely the clause of § 10 prescribing the conditions for the issuance of a search warrant has some meaning. To hold that a search may proceed without a warrant given probable cause would avoid the warrant process, and eviscerate the warrant clause. Read as a whole, § 10 prohibits a search except upon a prior finding by a detached magistrate of probable cause supported by oath or affirmation. Clearly distinguishable, a warrantless search circumvents both the magistrate and the requirement of an oath/affirmation, and invites after-the-fact rationalizing. While exigencies may in some cases justify an exception to the warrant requirement, in the instant case there was nothing (save perhaps mere inconvenience) to prevent the police from suing for a warrant. We ought to demand a demonstration of compelling reasons for proceeding without a warrant, lest for want of vigilance the exception devour the rule.

By our holding today we take one more step toward an Orwellian society wherein no citizen is secure in her/his person or possessions, and the right to privacy and freedom from unreasonable searches are but haunting bygones.

---

search and seizure; and no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

3. I am not persuaded by the majority's reliance on *Alabama v. White,* for two reasons. One, the United States Supreme Court interprets the Fourth Amendment, whereas this court interprets Kentucky Constitution, § 10. Two, *White* is distinguishable on its facts. The Court noted that White's departure from an apartment was within a time frame predicted by the anonymous informant, and that the caller had accurately predicted White's destination and her future behavior, demonstrating a "special familiarity" with her affairs. It was held that in the

totality of circumstances an investigatory stop was proper, there being reason to believe that the caller was *honest* and *well-informed,* the Court noting that even then the sufficiency of corroboration was a "close question." In the present case, such corroboration of the informant's veracity, reliability, and basis of knowledge is conspicuously absent.

4. Contrary to prevailing views, I insist that the use of dogs and technological devices to detect items concealed with a reasonable expectation of privacy constitutes a species of search. I sorely dread the day when police will routinely patrol neighborhoods and with impunity search every person, vehicle, or house at whom or at which the dog barks or the beeper beeps.