# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: AUGUST 26, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0250-MR

CHAZRICO GIBSON                                    APPELLANT

ON APPEAL FROM KENTON CIRCUIT COURT
V.                 HONORABLE GREGORY M. BARTLETT, JUDGE
NO. 18-CR-00981

COMMONWEALTH OF KENTUCKY                       APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Chazrico Gibson appeals as a matter of right[1] from the Kenton Circuit Court's decision denying his motion to withdraw his guilty plea. Gibson pled guilty to second-degree manslaughter and two counts of second-degree assault and was sentenced to twenty-years' imprisonment. On appeal, Gibson alleges three errors: first, that his plea was involuntary; second, that conducting his sentencing hearing remotely violated his constitutional rights; and finally, that the trial court erred by denying his motion for a continuance. Finding Gibson's allegations without merit, we affirm the Kenton Circuit Court.

---

[1] Ky. Const. § 110(2)(b).

## I. Factual and Procedural History

The record reflects that during July 2018 Gibson and a friend visited a Covington, Kentucky bar. While there Gibson and his companion were embroiled in a bar fight with at least three other men. At some point during the altercation Gibson drew his knife and stabbed the three men repeatedly, killing one. Consequently, a grand jury indicted Gibson for murder. The following May, Gibson agreed to plead guilty on the condition that his charges be amended to second-degree manslaughter and two counts of second-degree assault, for which he would be sentenced to twenty-years' imprisonment.

However, in October 2019 Gibson filed a motion to withdraw his guilty plea. Gibson alleged that the plea was involuntary because he received incomplete evidence, did not have time to reflect on his options, and had to make a decision regarding the plea deal without sufficiently reviewing available discovery. Specifically, Gibson alleged that the recordings of the incident he received came without audio, which Gibson stated would have altered his initial decision to accept the plea offered by the Commonwealth. Gibson simultaneously argued that his acceptance of the plea deal was conditioned on the Commonwealth offering an *Alford*[2] plea.

Following a hearing in December 2019, the trial court denied Gibson's motion to withdraw his plea as involuntary. Gibson was set to be sentenced on May 20, 2020. Unfortunately, March 2020 brought the first wave of the

---

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970).

2

COVID-19 pandemic to the Commonwealth, slowing and even closing essential government functions in Kentucky. On March 6, Governor Beshear declared a State of Emergency in the Commonwealth and shortly thereafter this Court entered Administrative Order 2020-22 which required, in part, that all participants be allowed to participate in court proceedings remotely. Pursuant to these guidelines, Gibson's sentencing hearing was held remotely.

During Gibson's sentencing hearing, he moved for a continuance on two grounds: (1) to review the presentence investigation report further, and (2) to secure the testimony of his sister and mother, who could not attend the amended hearing date.[3] The court denied both requests. Gibson testified at the sentencing hearing, as did his cousin. Ultimately, Gibson was sentenced in accordance with the plea agreement.

## II. Analysis

### A. Gibson voluntarily entered the plea agreement.

RCr[4] 8.08 requires all guilty pleas to be voluntarily and intelligently entered. Consequently, trial courts must determine that the defendant had an "understanding of the nature of the charge[]" and still, voluntarily, desired to enter a plea with the Commonwealth. *Id.*, *Bronk v. Commonwealth*, 58 S.W.3d 482, 486 (Ky. 2001). Trial courts have discretionary authority to accept or

---

[3] The record does not disclose why the court moved Gibson's sentencing hearing from May 20 to May 4.

[4] Kentucky Rules of Criminal Procedure.

deny plea agreements. RCr 8.10.[5] However, when the defendant alleges involuntariness, he or she is entitled to a hearing on the motion. *Edmonds v. Commonwealth*, 189 S.W.3d 558, 566 (Ky. 2006). If the plea was involuntary the court must grant the motion to withdraw; however, if the plea was voluntary the court retains discretion to either grant or deny the withdrawal motion. *Williams v. Commonwealth*, 229 S.W.3d 49, 51 (Ky. 2007) (citation omitted).

At the withdrawal hearing, the trial court is to consider the totality of the circumstances and conduct a *Strickland v. Washington* inquiry into the performance of the defendant's counsel. *Bronk*, 58 S.W.3d at 486. The *Strickland* inquiry asks: (1) whether defense counsel made errors serious enough to fall outside the scope of acceptable assistance; and (2) whether defense counsel's deficiencies affected the case so seriously that there was a reasonable chance the defendant would not have pled guilty. *Id.* at 486-87. Since the inquiry is inherently fact-sensitive, we review the trial court's finding of voluntariness for clear error, meaning that the decision was supported by

---

[5] The relevant text of RCr 8.10 reads:

> At any time before judgment the court may permit the plea of guilty . . . to be withdrawn and a plea of not guilty substituted.

> If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in that guilty plea the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

substantial evidence. *Thomas v. Commonwealth*, 605 S.W.3d 545, 554 (Ky. 2020) *abrogated on other grounds by Abbott, Inc. v. Guirguis*, __ S.W.3d __, 2021 WL 728860 (Ky. 2021). Thereafter, we review the trial court's decision to grant or deny the motion to withdraw for abuse of discretion. 605 S.W.3d at 554 (citation omitted).

Gibson, a high-school graduate with three years of collegiate education, asserts that his plea agreement must be rendered involuntary because he did not possess all the necessary discovery to make an informed decision, due to the ineffective assistance of his appointed counsel. We disagree. Instead, we find that the trial court did not err when it found Gibson's plea voluntary and subsequently denied his motion to withdraw.

After carefully reviewing the record, we are convinced that the trial court's findings were supported by substantial evidence. Gibson was originally indicted on one count of murder and two counts of assault in the second degree for which he faced 50-years' incarceration at 85% parole eligibility, should he have been convicted. Instead, pursuant to the plea agreement, the Commonwealth amended his charges to manslaughter in the second degree and two counts of assault in the second degree for which Gibson agreed to serve 20-years' incarceration at 20% parole eligibility.[6] Moreover, Gibson's plea

---

[6] Gibson also complains that his counsel, Mr. Polito, lied to him about the availability of an *Alford* plea. Our review of the record, however, shows that Mr. Polito brought the request for an *Alford* plea to the Commonwealth once, which rejected the offer. The record simply contains no evidence that Mr. Polito made any mention of the availability of an *Alford* plea beyond that entreaty to either Gibson or the Commonwealth. Moreover, Mr. Polito testified to his experience as a public defender and stated that he did not make a habit of promising his clients any certain outcomes.

colloquy further supports the trial court's finding. During the colloquy Gibson was given every opportunity to voice his dissatisfaction but chose not to. The following exchanges between Judge Bartlett and Gibson are particularly relevant to our conclusion:

> Judge Bartlett: I take it by your advanced education you can read and understand everything in these documents. Is that true?
>
> Gibson: Yes sir.
>
> . . .
>
> Judge Bartlett: Your attorney is Mr. Polito. Are you satisfied that he's been effective in representing you?
>
> Gibson: Yes sir.
>
> Judge Bartlett: No complaints about his service?
>
> Gibson: No.
>
> Judge Bartlett: I don't ask that to in any way imply that you should have complaints. But when someone is facing a 20-year sentence I want to know if they're happy with their lawyer now instead of 2 or 3 years down the road. So that's why I ask you that question. Now is the time to express any dissatisfaction with your legal representation, understood? And you have no problems?
>
> Gibson: No.

These exchanges demonstrate Gibson understood the rights he was waiving, the charges he faced, the consequences of his plea agreement, and expressed no dissatisfaction with his representation. Gibson had every opportunity to inform the judge of the alleged audio issues with his discovery, as well as his later complaints regarding the effectiveness of his counsel prior to agreeing to the plea. Consequently, the trial court did not err or abuse its discretion by denying his motion to withdraw his guilty plea.

6

### B. Gibson was properly sentenced by video conferencing.

Gibson asserts his constitutional right to be physically present at his sentencing hearing was violated when the trial court conducted the hearing remotely. We disagree. RCr 8.28 mandates that defendants be present "at every critical stage of trial . . . and at the imposition of the sentence." These Confrontation Clause errors are subject to harmless error review. RCr 9.24; *Heard v. Commonwealth*, 217 S.W.3d 240, 244 (Ky. 2007) (quoting *Barth v. Commonwealth*, 80 S.W.3d 390, 395 (Ky. 2001) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). However, "before a federal constitutional error can be held harmless, the [reviewing] court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Heard*, 217 S.W.3d at 244 (citations omitted). We test for harmless error by inquiring as to "any substantial possibility that the outcome of the case would have been different without the presence of that error." *Thacker v. Commonwealth*, 194 S.W.3d 287, 291 (Ky. 2006) (citing *Commonwealth v. McIntosh*, 646 S.W.2d 43, 45 (Ky. 1983)).

Gibson alleges that he was harmed by the video conferenced hearing because "he was not personally present to observe demeanor, confront witnesses face-to-face, lodge immediate observations and objections in a confidential manner with counsel, or have the court ascertain his own actions and demeanor." However, as *Maryland v. Craig* makes clear, the Confrontation Clause does not provide "an *absolute* right to a face-to-face meeting[.]" 497 U.S. 836, 836-37 (1990). In *Craig*, the Supreme Court held that the right to confront witnesses did not always have to be satisfied by a physical and face-

7

to-face confrontation when "denial of such confrontation is necessary to further an important public policy and only where the testimony's reliability is otherwise assured." *Id.* at 837 (citation omitted). This Court stated in *Commonwealth v. Willis* that "the right to confront [] is not absolute and may in appropriate cases be compromised to accommodate other legitimate interest in the criminal trial process." 716 S.W.2d 224, 228 (Ky. 1986) (citing *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)).[7]

To properly contextualize the circumstances surrounding Gibson's sentencing hearing we note that at the time of Gibson's sentencing on May 4, 2020, the Commonwealth of Kentucky was responding to the first wave of the COVID-19 pandemic. In response to the threat posed by the airborne virus, this Court issued Administrative Order 2020-22 on April 14, 2020. The order specified that "[a]ll participants to a proceeding, including parties and attorneys, must be allowed to participate remotely. Judges must use available telephonic and video technology to conduct all hearings, unless the parties are unable are unable to participate remotely." Ky. Admin. Order 2020-22(1). As the Order noted, we were responding to Governor's declaration of a State of Emergency in the Commonwealth, and the order's measures were introduced to "protect the health and safety of court employees, elected officials, and the general public[.]" *Id.*

---

[7] Gibson's argument is largely founded on *United States v. Garcia-Robles*, however, that case is not instructive here because that case involved the failure of the court to hold *any* resentencing hearing for the defendant. 640 F.3d 159, 161 (6th Cir. 2011). Gibson was afforded a full sentencing hearing.

Still, despite these limitations, Gibson's hearing allowed all participants to see and hear one another. Gibson's family was able to testify on his behalf and the trial judge was able to hear from the deceased victim's family. Moreover, Gibson was not at a greater disadvantage than anyone else involved in the hearing. With all parties participating remotely, every member had the same difficulties observing each other's demeanor and gaining the kind of information only available with face-to-face confrontations. Finally, the pandemic created a strong, albeit temporary, public interest in ensuring the safety of all parties involved by requiring remote participation. Consequently, the trial did not err by holding his sentencing hearing remotely.

### C. Gibson's motion for continuance was properly denied.

Granting a continuance lies within the sound discretion of the trial court. *Williams v. Commonwealth*, 644 S.W.2d 335, 336-37 (Ky. 1982). Accordingly, we do not disturb the order unless the court has abused that discretion. *Id.* at 337. When the defendant seeks a continuance to ensure the availability of a witness, RCr 9.04 requires an affidavit showing "what facts the affiant believes the witness will prove, and not merely the effect of such facts in evidence[.]" More plainly, if the witness's testimony is cumulative and will not affect the "final outcome" of the trial, the court's refusal to grant a continuance is not an abuse of discretion. *Estep v. Commonwealth*, 663 S.W.2d 213, 216 (Ky. 1983). Generally, the trial court considers a myriad of factors, chief among which asks whether denying the continuance will lead to identifiable prejudice. *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991),

9

*overruled on other grounds by Lawson v. Commonwealth*, 53 S.W.3d 534 (Ky. 2001). After reviewing the record, we find no abuse of discretion.[8]

Gibson's foundational argument asserts that he was prejudiced at the sentencing hearing because his mother and sister could not be present as mitigation witnesses. However, the record shows that both witnesses were able to, and did, write letters to the judge requesting leniency. Further, Gibson's cousin attended the hearing and spoke on his behalf. Moreover, despite Gibson's assertions that he could not effectively cross-examine witnesses, the only witnesses were from the deceased victim's family, called by the Commonwealth, and Gibson's counsel asked them no questions. We identify no prejudice.

### III. Conclusion

For the foregoing reasons we affirm the judgment of the Kenton Circuit Court.

All sitting. All concur.

---

[8] The Commonwealth argues that Gibson did not comply with RCr 9.04 when he filed his motion for a continuance. However, given the unique circumstances of the continuance, we review Gibson's argument.

10

COUNSEL FOR APPELLANT:

Jared Travis Bewley
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Mark Daniel Barry
Assistant Attorney General